IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW O'REILLY,           *

    Plaintiff,               *

v.                          *           Civil Action No. GLR-18-3622

ADAM TSOTTLES, et al.,      *

    Defendants.              *
                                       ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Waste Management, Inc. ("WMI") and Adam Tsottles' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 17) and Plaintiff Matthew O'Reilly's Motion to Treat Defendants' Amended Motion to Dismiss as a Motion for Summary Judgment (ECF No. 27). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion to Dismiss the Amended Complaint and deny the Motion to Treat the Motion to Dismiss as a Motion for Summary Judgment.[1]

---

[1] Also pending before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 14); O'Reilly's Motion for Partial Summary Judgment for Defamation Per Se (ECF No. 30); O'Reilly's Motion for Judgment on the Pleadings (ECF No. 32); O'Reilly's Motions to Amend, Join, and For Orders to Show Cause and Relief (ECF No. 33); and Plaintiff's Motion for an Order to Show Cause for Contempt (ECF No. 57).

The Motion to Dismiss (ECF No. 14) is denied as moot, because O'Reilly filed an Amended Complaint on April 26, 2019. An amended complaint generally moots a pending motion to dismiss the original complaint because the original complaint is superseded. Due Forni LLC v. Euro Rest. Solutions, Inc., No. PWG-13-3861, 2014 WL 5797785, at *2 (D.Md. Nov. 6, 2014).

# I.    BACKGROUND[2]

Roy Palmer and Henry Prioleau are employed by Waste Management of Maryland, Inc. ("Maryland Waste") (Mot. Dismiss Pl.'s Am. Compl. ["Mot. Dismiss"] at 1, ECF No. 17-1). On October 16, 2017, O'Reilly was at an apartment in the 3200 block of North St. Paul Street in Baltimore, Maryland when Palmer and Prioleau arrived at or before 7:00 a.m. to collect residents' waste. (Am. Compl. ¶¶ 19, 32, 34, ECF No. 12; see also Mot. Dismiss at 1). Palmer was operating the trash truck. (Am. Compl. ¶ 32). O'Reilly approached Palmer, saying, "I thought we agreed that you weren't going to come before ten o'clock any longer?" (Id.). Palmer told O'Reilly, "That's not how this works," and O'Reilly walked away. (Id.).

---

O'Reilly's Motion for Partial Summary Judgment for Defamation Per Se (ECF No. 30) is denied as moot, because the Court has determined that the claim is barred by Maryland's statute of limitations as explained herein.

The Motion for Judgment on the Pleadings (ECF No. 32) is denied, because the Motion was filed before Defendants filed an Answer. See Fed.R.Civ.P. 12(c) (permitting the filing of such a motion "[a]fter the pleadings are closed . . .").

O'Reilly's Motions to Amend, Join, and For Orders to Show Cause and Relief (ECF No. 33) is denied. Moreover, the request for leave to amend was prematurely filed and O'Reilly failed to specifically identify a basis for requesting leave to amend.

O'Reilly's Motion for an Order to Show Cause for Contempt (ECF No. 57) is denied because it wholly fails to plead any of the elements for civil contempt. See Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000) (identifying the four elements of civil contempt, which must be proved by clear and convincing evidence: existence of a valid decree that the nonmovant had actual or constructive knowledge of; the decree benefited the movant; the nonmovant violated that decree with, at least, constructive knowledge of the violation; and harm to the movant).

[2] Unless otherwise noted, the Court takes the following facts from O'Reilly's Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

As he was walking away, O'Reilly allegedly heard the driver's side door on the trash truck open and then saw Palmer get inside. (Id. ¶ 35). Concerned that he may be run over, O'Reilly "reached up with his left hand and rapped his ring twice on the driver's side windscreen" to get Palmer's attention. (Id.). O'Reilly alleges that the trash truck "lurched forward" knocking him to the ground. (Id. ¶ 36). Again, concerned that he may be run over, O'Reilly ran toward the trash truck and "grasped the wipers for dear life." (Id. ¶ 37). The windshield wipers broke off in O'Reilly's hand and he dropped them to the ground. (Id.). At some point during the incident, O'Reilly allegedly assaulted Prioleau. (Mot. Dismiss at 1). Baltimore City Police responded to the scene and interviewed O'Reilly, Palmer, and Prioleau but left without making any arrests. (Am. Compl. ¶ 44).

The following day, on October 17, 2017, Adam Tsottles, a Senior Route Manager for Maryland Waste, went to the Baltimore City Police Department and filed charges against O'Reilly. (Mot. Dismiss at 1–2). Tsottles alleged that O'Reilly "attempted to steal the vehicle" and that "[a]ll of this was caught on video." (Am. Compl. ¶ 49). O'Reilly was subsequently charged with second-degree assault, malicious destruction of property, and attempted theft.[3] (Mot. Dismiss at 2). O'Reilly later entered an Alford plea[4] to the second-

_____

[3] Neither party provides a factual account regarding the alleged theft of the trash truck; however, O'Reilly dedicates several paragraphs in his Amended Complaint to refuting such allegations. (See Am. Compl. ¶¶ 39–43).

[4] An Alford plea "lies somewhere between a plea of guilty and a plea of nolo contendere" because it contains a "protestation of innocence." Bishop v. State, 7 A.3d 1074, 1085 (Md. 2010) (internal quotations and citations omitted). Individuals who enter into this plea may be "unwilling or unable" to admit their participation in the acts constituting the crime. Id. (quoting North Carolina v. Alford, 400 U.S. 25, 36 (1970)).

degree assault charge. (Id.; see also Maryland v. O'Reilly, No. 6B02363577 (Dist.Ct.Balt.City filed Oct. 17, 2017).

On November 27, 2018, O'Reilly, proceeding pro se, sued WMI and Tsottles. (ECF No. 1). O'Reilly alleged that Tsottles knowingly made false and defamatory statements, causing him to be criminally charged with attempted theft of the trash truck. (Compl. at 4). On April 26, 2019, O'Reilly filed an Amended Complaint, supplementing his factual allegations and causes of action. (ECF No. 12). The thirty-three count Amended Complaint alleges: common law defamation per se (Count 1); civil conspiracy to defame (Count 2); aiding and abetting defamation (Count 3); violation of Maryland Transportation Code §§ 22-602 (Count 4); violation of Code of Maryland Regulation 11.14.07 (Count 5); violation of Health Code of Baltimore City § 9-206 (Count 6); violation of Health Code of Baltimore City § 7-221 (Count 7); promissory estoppel (Count 8); intentional infliction of emotion distress ("IIED") (Count 9); negligent infliction of emotional distress (Count 10); civil conspiracy to inflict emotional distress (Count 11); aiding and abetting the infliction of emotional distress (Count 12); assault (Count 13); negligent assault (Count 14); battery (Count 15); negligent battery (Count 16); malicious prosecution (Count 17); civil conspiracy to prosecute maliciously (Count 18); aiding and abetting malicious prosecution (Count 19); abuse of process (Count 20); civil conspiracy to abuse process (Count 21); obstruction of justice (Count 22); civil conspiracy to obstruct justice (Count 23); aiding and abetting the obstruction of justice (Count 24); fraud (Count 25); civil conspiracy to defraud (Count 26); aiding and abetting fraud (Count 27); deprivation of due process (Count 28); civil conspiracy for deprivation of due process (Count 29); aiding and abetting

the deprivation of due process (Count 30); spoliation of evidence (Count 31); civil conspiracy to despoil evidence (Count 32); and aiding and abetting the spoliation of evidence (Count 33). (Am. Compl. ¶¶ 73–116). O'Reilly seeks $25 million in damages. (Id. ¶ 124).

On May 13, 2019, Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 17). On June 5, 2019, O'Reilly filed a Motion to Treat Defendants' Amended Motion to Dismiss as a Motion for Summary Judgment ("Motion to Convert") (ECF No. 27). O'Reilly filed an Opposition to the Motion to Dismiss on June 7, 2019.[5] (ECF No. 31). On June 24, 2019, Defendants filed an Opposition to the Motion to Convert and a Reply to the Motion to Dismiss. (ECF Nos. 40, 43). O'Reilly filed a Reply to the Motion to Convert on July 10, 2019. (ECF No. 48).

## II.    DISCUSSION

### A.    Personal Jurisdiction under Rule 12(b)(2)

WMI argues that the Court does not have either specific or general jurisdiction over it because WMI is a Delaware corporation that is not registered to conduct business in Maryland. WMI also asserts that Tsottles is employed by a separate entity—Maryland

---

[5] O'Reilly attached a "Memorandum of Restatement of the Elements of Plaintiff's Causes of Action" to his Opposition in which he purports to "enumerate[] each of the causes of action, with cross-references to some . . . of the supporting factual statements in the original and/or Amended Complaints." (See ECF No. 31-2). The Memorandum contains legal and factual assertions that were not made in the Amended Complaint. Thus, as Defendants correctly note, the Memorandum represents an impermissible attempt to supplement O'Reilly's claims through a responsive pleading. Hurst v. District of Columbia, 681 F.App'x 186, 194 (4th Cir. 2017) (holding "a plaintiff may not amend her complaint via briefing"). The Court will not consider the Memorandum.

Waste—as are the employees who were present during the October 16, 2017 incident. WMI argues that it has no connection to this case, warranting its dismissal. Conversely, O'Reilly contends that jurisdiction is conferred under Maryland's long arm statute, and that WMI regularly and purposefully avails itself of the benefits of conducting business in Maryland by virtue of its website, and because it advertises and solicits business in the State. The Court will first assess whether it may exercise specific jurisdiction over WMI; if it cannot, the Court will determine if WMI is subject to general jurisdiction.

### 1.     Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan, 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and

resolve all factual disputes, in the plaintiff's favor." Mylan, 2 F.3d at 60; Carefirst, 334 F.3d at 396.

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334 F.3d 396. Maryland's long-arm statute authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.[6] See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); Base Metal

---

[6] The Maryland long-arm statute, Md. Code Ann. Cts. & Jud. Proc. § 6–103(b), authorizes a court to exercise personal jurisdiction over a person, who directly or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;
(3) Causes tortious injury in the State by an act or omission in the State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 212–13 (4th Cir. 2002). That broad reach does not suggest that analysis under the long-arm statute is irrelevant. Rather, it merely reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Personal jurisdiction may be specific or general. Under Armour, Inc. v. Battle Fashions, Inc., 294 F. Supp. 3d 428, 433 (D.Md. 2018), as discussed below.

  2. **Analysis**

   a. **Specific Jurisdiction**

  If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, a court must consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." Carefirst, 334 F.3d at 396; see also ALS Scan, 293 F.3d at 711–12; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8

(1984). If, and only if, the plaintiff has satisfied the first prong, will the Court consider the second and third prongs. <u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009).

In assessing the extent to which a corporation purposefully availed itself of the benefits of conducting business in a forum, the Court considers the following non-exhaustive list of factors: first, whether the defendant maintains offices or a registered agent in the forum state; second, whether the defendant owns any property in the forum; third, the extent to which the defendant solicits or initiates business in the state; fourth, whether the defendant "deliberately engaged in significant or long-term business activities" in the state; and fifth, whether the defendant made in-person contact with residents regarding a business relationship.[7] <u>Id.</u> The Court analyzes each factor in turn.

All but the third factor decisively weigh in WMI's favor. The first factor—appointment of a registered agent and maintaining local office buildings—supports WMI's position. WMI affirmatively denies being registered to conduct business in the State, and O'Reilly does not allege any facts suggesting otherwise. WMI also denies maintaining "an office, mailing address, or bank account" in Maryland. (<u>See</u> Tippy Aff. ¶ 8, ECF No. 17-4). Again, O'Reilly does not argue, or provide evidence, to the contrary. As to the second

---

[7] Additional factors include "the nature, quality, and extent of the parties' communication about the business being transacted," whether the parties contractually agreed that any disputes would be governed by the law of the forum state, and "whether the performance of contractual duties was to occur within the forum." <u>Consulting Engineers Corp.</u>, 561 F.3d at 278. Because the parties to this litigation do not have a business relationship governed by a contract, these factors are irrelevant to the Court's analysis and will not be considered.

factor, O'Reilly does not allege that WMI owns any property in this forum, whereas WMI asserts that it "does not have a direct interest in any real or personal property located in Maryland" other than "as the ultimate shareholder." (Id. ¶ 10). The fourth factor—significance and longevity of deliberate business dealings—also weighs in WMI's favor, as O'Reilly has failed to allege any facts that would lead this Court to conclude that WMI has deliberately conducted significant or long-term business in this jurisdiction. To the contrary, WMI argues that Maryland Waste is the entity that "is engaged in providing waste collection, transfer and disposal services, and recycling and resource recovery in the State of Maryland." (Id. ¶ 16). As to the fifth factor, O'Reilly has not alleged any facts tending to show that WMI solicited Maryland residents in person.

The only factor that could conceivably sway in O'Reilly's favor is the third, which relates to WMI's web accessibility and activity. To that point, O'Reilly alleges that WMI operates a website, "where Maryland entities are able, and encouraged, to search for service availability, choose options, and engage Waste Management, Inc., for periodic and/or temporary waste removal services in Maryland, among other offerings." (Pl.'s Am. Mot. Oppose Defs.' Am. Mot. Dismiss ["Pl.'s Opp'n"] ¶ 25, ECF No. 31-1). WMI neither admits nor denies ownership of that domain. Even if this Court assumes O'Reilly's assertion is true, as the Court is obligated to do at this stage, WMI's internet presence and activity are not dispositive in this analysis.

This Court has held that "the mere act of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each state in which the information is accessed." Mike's Train House, Inc. v. Metro. Transp. Auth., No. 16-CV-

02031-JFM, 2016 WL 6652712, at *9 (D.Md. Nov. 9, 2016) (emphasis added) (internal quotations and citations omitted). The ultimate question is whether a defendant "acted with the manifest intent of targeting Marylanders." Id. (citing Carefirst, 334 F.3d at 339). To that end, "[t]he Fourth Circuit has adopted a 'sliding scale' model for website-based specific jurisdiction." Id. On one end of the spectrum lies defendants who "clearly do[] business over the Internet," such as contractually engaging residents of the forum state through "repeated transmission of computer files." Id. (quoting ALS Scan, 293 F.3d at 714). On the opposite end are defendants who operate "passive" websites that simply make information available to users in foreign jurisdictions. Id. Bridging the gap are defendants who operate "interactive" websites, where users can "exchange information with the host computer." Id.

Here, O'Reilly characterized WMI's website as "interactive" and asserts that users can search for services and "engage [WMI] for periodic and/or temporary waste removal services in Maryland." (Pl.'s Opp'n ¶ 25). However, this allegation, standing alone, is insufficient to bring WMI within this Court's jurisdictional reach, as there is no evidence that WMI targeted Maryland residents at all and certainly no more than nonresidents. See Mike's Train House, 2016 WL 6652712, at *10 (declining to exercise personal jurisdiction where the plaintiff "has done nothing to target the residents of Maryland more than the residents of any other state" through its website).

Lastly, the Court considers a factor that was neither identified in Consulting Engineers Corp. nor argued by O'Reilly as a potential basis for specific jurisdiction:

WMI's relationship to Maryland Waste.[8] WMI asserts that Waste Management of Maryland is its "indirect, wholly owned subsidiary" and the "wholly owned subsidiary of Waste Management Holdings, Inc." (Tippy Aff. ¶¶ 13–14). However, even this relationship appears insufficient to bring WMI within the jurisdictional grasp of this Court.

In Mylan, the Fourth Circuit specifically considered whether "a federal district court may assert personal jurisdiction over a foreign parent corporation solely because the parent's third-tier subsidiary corporation, over which the parent exerts no control, conducts business in the forum." 2 F.3d at 58. The Fourth Circuit concluded that it could "attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary." In determining whether the parent company exerted "considerable control" over the subsidiary, the Court considered (1) whether the subsidiary could make "significant decisions" without the parent company's approval; (2) whether the parent and subsidiary maintained "separate books and records;" (3) whether the entities employed separate accounting procedures; (4) if each entity held separate directors' meetings; (5) whether the subsidiary has "some

_____

[8] Although O'Reilly argues that WMI "is ultimately liable for the actions of its owned and controlled subsidiaries, including Waste Management of Maryland, Inc." (Pl.'s Opp'n ¶ 59), he appears to be making an argument for respondeat superior—not a jurisdictional argument. In any event, the Court rejects O'Reilly's attempt to hold WMI liable under that theory, as the Amended Complaint is completely silent as to any fact that, even if true, would establish that WMI is somehow liable for Maryland Waste's conduct. See, e.g., Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC, 929 F.Supp.2d 502, 517 (D.Md. 2013)(rejecting plaintiff's claim that a parent company was liable for the conduct of its subsidiary under respondeat superior where plaintiff made "only conclusory assertions as to control" by the parent company). Here, O'Reilly makes no assertions regarding the extent to which, if at all, WMI exerts control over Maryland Waste.

independent reason for its existence, other than being under the . . . control of another legal entity;" and (6) whether the parent "knew or should have known, that its conduct would have some impact in Maryland." 2 F.3d at 61. In <u>Mylan</u>, the Court concluded that these factors did not support personal jurisdiction. This Court reaches that same conclusion.

Considering the above factors, O'Reilly fails to allege facts establishing that this Court has specific jurisdiction over WMI as the parent company of Maryland Waste. To be clear, O'Reilly does not offer any facts or exhibits tending to show that WMI exerts considerable control over Maryland Waste. WMI acknowledges that it is the parent company of Waste Management Holdings, Inc. ("WMH") and that WMH has subsidiaries, including Maryland Waste, that provide waste disposal and recycling services in Maryland. Thus, Maryland Waste has a legitimate business purpose and "independent reason for . . . existence." <u>Mylan</u>, 2 F.3d at 61. Moreover, because Maryland Waste is the entity that services Maryland residents, this Court would be hard-pressed to identify instances in which WMI knew or should have known that its conduct would have some impact in Maryland.

WMI also asserts that subsidiaries owned by WMH are "separate and distinct corporate entities, each of which has its own officers and directors." (Tippy Aff. ¶ 4). According to WMI, "the operating companies [WMI and WMH] also maintain separate books and records" and "the corporate minutes and records of [WMI] and [WMH] are not intermingled with the corporate minutes or records of any of their subsidiaries." (<u>Id.</u>). WMI further asserts that transactions between it and its subsidiaries "are done at arm's length with full regard for maintaining the formalities of such transaction," (<u>id.</u> ¶ 5), and that none

of its subsidiaries are authorized to accept service of process on WMI's behalf, (id. ¶ 9). Although WMI's affidavit in support of dismissal does not specifically address whether WMI must approve significant decisions made by Maryland Waste or whether their directors have separate meetings, the Court is persuaded that, based upon the averments that were made, WMI does not exercise considerable control over Maryland Waste, thereby justifying the imposition of personal jurisdiction.

In sum, O'Reilly has failed to carry his burden of establishing that WMI has purposefully availed itself of the privilege of conducting activities in the state, as required under the first prong in Carefirst, and based upon the factors articulated in Consulting Engineers Corp. and Mylan. Having concluded that O'Reilly failed to satisfy the first Carefirst prong, the Court need not continue its analysis under the second and third prongs. See Consulting Engineers Corp., 561 F.3d at 278. Next, the Court considers whether WMI falls within the Court's general jurisdiction.

### b. General Jurisdiction

If a defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. It is well-established that "a corporation's 'place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.'" Cricket Grp., Ltd. v. Highmark, Inc., 198 F.Supp.3d 540, 546 (D.Md. 2016) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)). Nonetheless, courts may exercise general jurisdiction over nonresident defendant corporations when "their affiliations with the State are so continuous and systematic as to render them essentially at

home in the forum State." <u>BNSF Ry. Co. v. Tyrrell</u>, 137 S.Ct. 1549, 1558 (2017) (quoting <u>Daimler</u>, 571 U.S. 117 at 127 (internal quotation marks omitted)).

Whether the defendant corporation is "essentially at home" does not "focus solely on the magnitude of the defendant's in-state contacts." <u>Id.</u> at 1559 (internal quotation marks omitted). Instead, courts must examine the defendant corporation's "activities in their entirety, nationwide and worldwide." <u>Daimler</u>, 571 U.S. at 139 n.20. When activities in a particular forum are "so substantial and of such a nature as to render the corporation at home in that State" in light of all of the corporation's activities, a court may exercise general jurisdiction. <u>BNSF Ry.</u>, 137 S.Ct. at 1558 (quoting <u>Daimler</u>, 571 U.S. at 139 n.19) (internal quotation marks omitted).

Here, WMI is not incorporated in Maryland, and WMI does not maintain its principal place of business in this State. Although O'Reilly alleges that WMI owns and operates a website that is accessible to Maryland residents, O'Reilly has failed to allege "a connection between the cause of action in this case and a specific transaction with a Maryland resident" such that his conclusion that the website is "interactive" is of "limited significance. <u>Robbins v. Yutopian Enter. Inc.</u>, 202 F.Supp.2d 426, 430 (D.Md. 2002). Moreover, this Court has specifically rejected the argument O'Reilly now advances. <u>Id.</u> This Court has previously held that "the fact that a website is available for access by residents of the forum state, and contains advertising for the defendant's goods or services [is] [in]sufficient to subject the operator to the general jurisdiction of the forum's courts." <u>Id.</u> Thus, O'Reilly's factual allegations fail to establish that WMI is subject to general jurisdiction.

At bottom, O'Reilly has failed to establish that this Court may exercise personal jurisdiction over WMI.[9] Accordingly, the Court must grant Defendants' Motion to Dismiss, as to WMI, for lack of personal jurisdiction.

**B.      Sufficiency of Service of Process under Rule 12(b)(5)**

Tsottles argues that O'Reilly failed to properly serve him in a manner prescribed by Rule 4(c) because O'Reilly mailed copies of the Complaint, Amended Complaint, and Summons to Tsottles' place of employment. The Court concludes that Tsottles has been properly served.

Under Fed.R.Civ.P. 12(b)(5), a defendant may move to dismiss for insufficient service of process. If service is contested, the "plaintiff bears the burden of establishing the validity . . . pursuant to Rule 4." O'Meara v. Waters, 464 F.Supp.2d 474, 476 (D.Md. 2006). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." Clark v. AT & T Corp., No. CIV.A. DKC 13-2278, 2014 WL 1493350, at *2 (D.Md. Apr. 15, 2014). The "plain requirements for the means of effecting service of process," however, "may not be ignored." Id.

---

[9]  O'Reilly requests an opportunity to conduct jurisdictional discovery. "[T]he decision whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." Base Metal Trading Ltd., 283 F.3d at 216 n.3. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst, 334 F.3d at 402. Here, O'Reilly makes only conclusory assertions regarding WMI's contact with the State of Maryland and cites caselaw clearly undermining his jurisdictional claims. Accordingly, the Court will deny O'Reilly's request to conduct discovery.

Rule 4(e) governs service of process and provides that a plaintiff may serve a defendant in any manner permitted by the laws of the state in which the court is located. Fed.R.Civ.P. 4(e). Under Maryland law, an individual may be personally served by mailing a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery." Md. Rule 2-121(a)(3); see also Little v. Estes, No. CIV. WDQ-13-1514, 2013 WL 5945675, at *2 (D.Md. Nov. 5, 2013), report and recommendation adopted sub nom. Little v. E. Dist. Police Station, No. CIV. WDQ-13-1514, 2014 WL 271628 (D.Md. Jan. 22, 2014). Service by certified mail under Rule 2-121 is complete upon delivery. Id. Furthermore, Rule 2-121(a)(3) neither identifies nor limits the locations where that certified mailing can be sent.

O'Reilly sent the original Complaint and the Amended Complaint via certified mail with restricted delivery to Tsottles at his place of employment on April 2, 2019 and April 26, 2019, respectively. Accordingly, service upon Tsottles was complete when O'Reilly sent Tsottles the Summons, Complaint, Amended Complaint, and related papers via certified mail with restricted delivery to his place of employment. Thus, the Court will deny Tsottles' motion to dismiss for failure to properly serve.[10] The Court will now consider the sufficiency of the Amended Complaint as against Tsottles, who is the only remaining Defendant.

---

[10] Because the Court concludes that service of process comports with Rule 2-121, the Court will not consider O'Reilly's arguments.

**C.  Conversion of Motion to Dismiss under Rule 12(d)**

O'Reilly filed a Motion to Treat Defendants' Amended Motion to Dismiss as a Motion for Summary Judgment (ECF No. 27) because Tsottles' Motion included records from O'Reilly's court proceedings in the District Court of Maryland for Baltimore City. (See, e.g., Mot. Dismiss Ex. 2 ["State Court Docket"], ECF No. 17-3).

The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion without converting it to a motion for summary judgment. Fed.R.Civ.P. 12(d); see also Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. Of relevance here is the exception allowing the Court to consider matters of public record, including state court records. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Wittholn v. Fed. Ins. Co., 164 F.App'x 395, 397 (4th Cir. 2006) (per curiam) (concluding that state court records are public records of which a federal district court may take judicial notice).

Here, Tsottles attached to his Motion to Dismiss publicly available court records. Accordingly, the Court may consider them without converting Tsottles' Motion to one for summary judgement. O'Reilly's Motion to convert is denied.

**D.  Sufficiency of Allegations under Rule 12(b)(6)**

**1.  Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City

of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

When, as here, the plaintiff is proceeding pro se, the Court will liberally construe the pleadings, which are held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

### 2. Analysis

#### a. Undisputed Claims

The Motion to Dismiss challenges each and every one of O'Reilly's thirty-three claims. Specifically, Tsottles argues: the battery claim must be dismissed because he is not the proper party to that claim; that negligent battery is not a cognizable offense; that the assault claim is barred by Maryland's one-year statute of limitations; that there is no cause of action for obstruction of justice; there is no due process cause of action against private actors; prior to filing a private lawsuit for violation of Baltimore City Health Code § 9-206, O'Reilly was required to notify the Commissioner, as required by § 9-214, but he failed to do so; and that there is no private right to action to enforce § 22-602 of the Maryland Transportation Article, Code of Maryland Regulation 11.14.07, or § 7-221 of the Baltimore City Health Code. O'Reilly did not respond to any of these arguments in his Opposition. This Court has recognized that "by failing to respond to an argument made in a motion to

dismiss, a plaintiff abandons his or her claim." <u>Muhammad v. Maryland</u>, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012); see also <u>See Ferdinand-Davenport v. Children's Guild</u>, 742 F.Supp.2d 772, 783 (D.Md. 2010) (a plaintiff's failure to address arguments in a defendant's motion to dismiss a particular claim constitutes an abandonment of the claim). Because O'Reilly wholly failed to defend the above-referenced claims, while refuting Tsottles' arguments as to other claims, the Court concludes that O'Reilly has abandoned those claims and will dismiss counts 4, 5, 7, 13–16, 22–24, and 28–30.

### b. Partially Disputed Claims

Tsottles argues that O'Reilly has failed to state a claim for IIED, civil conspiracy, and aiding and abetting IIED; malicious prosecution, civil conspiracy, and aiding and abetting the same; abuse of process, civil conspiracy, and aiding and abetting the same; and promissory estoppel. Tsottles also asserts that O'Reilly's fraud claim is not supported by the requisite level of specificity. In defending the sufficiency of his claims, O'Reilly generally asserts that Defendants are "plainly incorrect" because he "has clearly and substantially pleaded the essential elements of each and every cause of action in his complaint." (Pl.'s Opp'n ¶ 43). Similarly, and presumably in response to Tsottles' argument that his fraud claim lacks the required specificity, O'Reilly asserts "[t]he specificity of the causes of action and factual statements in [his] Amended Complaint is more than ample for Defendants to know what constitutes the allegations against them, and reasonably and properly prepare any available defenses thereof." (<u>Id.</u> ¶ 45).

While O'Reilly intends to defend these claims, his response is wholly inadequate, as it is "entirely conclusory, and contain[s] no specific arguments addressing the defendant['s] points," warranting dismissal of those claims. <u>Bankcroft Commercial, Inc. v. Goroff</u>, No. CCB-14-2796, 2014 WL 7409489, at *7 (D.Md. Dec. 31, 2014); <u>see also Hardaway v. Equity Residential Mgmt., LLC</u>, 2016 WL 3957648, at *6 (D.Md. July 22, 2016) (reiterating that the court may treat a defendant's arguments as uncontested and dismiss the complaint when the plaintiff simply "repeat[s] many of the same conclusory allegations in their opposition brief that appeared in the . . . amended complaint"). Because Tsottles' arguments appear meritorious, and O'Reilly has offered no more than conclusory assertions, the Court concludes that O'Reilly has, in essence, abandoned these claims. Accordingly, the Court dismisses counts 8, 9, 11, 12, 17 19–21, and 25–27.

The Court now considers the claims O'Reilly defended in opposition to the Motion to Dismiss.

### c. Disputed Claims

#### i. Defamation

In Maryland, claims for libel and slander must be filed within one year from the date they accrue. Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5-105. Similarly, "Maryland imposes a one-year statute of limitations on claims for defamation." <u>Long v. Welch & Rushe, Inc.</u>, 28 F.Supp. 3d 446, 456 (D.Md. 2014) (citing CJP § 5-105). The statute of limitations begins to run the day the statements are improperly communicated. <u>Id.</u> However, Maryland recognizes and applies the discovery rule to defamation claims. <u>Ayres v. Ocwen Loan Servicing, LLC</u>, 129 F.Supp.3d 249, 272 (D.Md. 2015).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., 731 F.Supp.2d 443, 449 (D.Md. 2010) (citing Lumsden v. Design Tech Builders, Inc., 749 A.2d 796, 801 (2000)), aff'd, 495 F.App'x 350 (4th Cir. 2012). However, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" Dual Inc. v. Lockheed Martin Corp., 857 A.2d 1095, 1104 (2004). A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" Id. (quoting Pennwalt Corp. v. Nasios, 550 A.2d 1155, 1159 (1988)) (alterations in original).

Tsottles contends that O'Reilly's defamation per se and civil conspiracy to defame claims are barred by Maryland's one-year statute of limitation. O'Reilly argues that his original Complaint, filed on November 27, 2018 is timely, because his claims were tolled until he learned of "the substance and detail" of "Tsottles' words" on November 28, 2017.[11] (Am. Compl. at 12). The Court agrees with Tsottles.

First, O'Reilly's confrontation with Palmer and Prioleau and the alleged attempted theft occurred on October 16, 2017. The next day, on October 17, 2017, Tsottles reported the incident to police. According to the docket in O'Reilly's underlying criminal case, the

---

[11] The docket indicates that the case was filed on November 29, 2017. (See State Court Docket).

summons was issued that same day on October 17, 2017.[12] (See State Court Docket). The

summons, accompanied by a copy of the charging document, instructed O'Reilly to appear

in court. See Md. Rule 4-212(b) ("A summons . . . shall advise the defendant to appear in

person at the time and place specified or, in the circuit court . . . A copy of the charging

document shall be attached to the summons."). Upon receipt of the summons, O'Reilly

possessed "facts sufficient to cause a reasonable person to investigate further." Pennwalt

Corp., 550 A.2d at 1159. The discovery rule does not require, as O'Reilly seems to suggest,

that he be aware of the "the substance and detail" of the allegedly defamatory statement.

Accordingly, the Court dismisses counts 1–3 as time barred.

### ii. Negligent Infliction of Emotional Distress

Tsottles argues that Maryland does not recognize a cause of action for negligent

infliction of emotional distress. O'Reilly acknowledges the well-settled case law regarding

negligent infliction of emotional distress but contends that Rule 11(b)(2)[13] allows him to

---

[12] Service of a summons is made either "by mail or by personal service by a sheriff or other peace officer." Md. Rule 4-212(c).

[13] Fed. R. Civ. P. 11 provides:

> By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> . . .
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. . .

advocate for a modification or extension of established law. O'Reilly then argues that failing to recognize negligent infliction of emotional distress as a claim "would violate Maryland's precept of 'a remedy for every wrong,'" and that the Court should allow the claim to proceed because he would otherwise be without relief. (Pl.'s Opp'n ¶¶ 78–79). The Court agrees with Tsottles.

Maryland simply does not recognize negligent infliction of emotional distress as an independent cause of action. Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 320 (1995); see also Abrams v. City of Rockville, 596 A.2d 116, 118 (1991) (affirming the lower court's dismissal of negligent infliction of emotional distress because it was not "a cognizable claim under Maryland law"). O'Reilly has not offered a compelling argument justifying the reversal or modification of this rule. Accordingly, the Court will dismiss O'Reilly's claim for negligent infliction of emotional distress (count 10).

### iii. Spoliation of Evidence

In his Amended Complaint, O'Reilly alleges that the trash truck was equipped with a "DriveCam . . . which record[s] video of the interior cabin and exterior of the equipment." (Am. Compl. ¶ 23). He further alleges that he never attempted to reach into or enter the trash truck during the October 16, 2017 incident, and that the "DriveCam" video would have shown that, but Tsottles failed to preserve and disclose the video. (Id. ¶¶ 41, 53–54). Tsottles argues there is no independent cause of action for spoliation in Maryland and cites Goin v. Shoppers Food Warehouse Corp., 890 A.2d 894, 898 (2006), in support. O'Reilly again relies upon Rule 11(b)(2) and argues that the holding in Goin and related cases should not apply to this case, because those cases concerned "spoliation committed by a party

within that specific action," whereas this case involves spoliation by a "third-party." (Pl.'s Opp'n ¶¶ 82, 84(a)–(g)). Again, O'Reilly has not offered a compelling argument justifying the reversal or modification of this rule. The Court will dismiss O'Reilly's claims for spoliation of evidence (count 31); civil conspiracy to despoil evidence (count 32); and aiding and abetting the spoliation of evidence (count 33).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 53). The Court will deny O'Reilly's Motion to Treat the Motion to Dismiss as a Motion for Summary Judgment (ECF No. 27).

A separate order follows.

Entered this 30th day of March, 2020.


_____/s/_____
George L. Russell, III
United States District Judge